## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **JAKE RUFFINO,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CASE NO. 3:08-cv-1521 (VLB)** |
| | : | |
| **THERESA LANTZ, et al.,** | : | |
| **Defendants.** | : | **March 9, 2010** |

### MEMORANDUM OF DECISION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. #20]

In this pro se civil rights action brought pursuant to 42 U.S.C. § 1983, the plaintiff, Jake Ruffino (hereinafter referred to as "Ruffino"), challenges a requirement that inmates who are undergoing the first thirty days of Phase II of the Administrative Segregation Program at Northern Correctional Institution wear handcuffs during recreation.  He names as defendants Commissioner of Correction Theresa Lantz, Warden of Northern Correctional Institution Jeffrey McGill, Deputy Warden of Security and Operations for Northern Correctional Institute Terence Rose, and Deputy Warden of Programs and Treatment for Northern Correctional Institute Valerie Light (hereinafter collectively referred to as "Defendants").  On October 28, 2009, the Court granted the Defendants' Partial Motion to Dismiss, thereby dismissing Ruffino's Eighth Amendment claims and requests for declaratory and injunctive relief.  See Doc. #24.  The Defendants now move for summary judgment on the Plaintiff's sole remaining claim for violation of his Fourteenth Amendment right to due process.  See Doc. #20.  For the reasons that follow, the Defendants' motion is GRANTED.

## I.  <u>STANDARD OF REVIEW</u>

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is therefore entitled to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).  The moving party may satisfy this burden "by showing – that is pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." <u>PepsiCo, Inc. v. Coca-Cola Co.</u>, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted).  Once the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," <u>Anderson</u>, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion for summary judgment.  <u>Graham v. Long Island R.R.</u>, 230 F.3d 34, 38 (2d Cir. 2000).

When reviewing the record, the Court resolves all ambiguities and draws all permissible factual inferences in favor of the party against whom summary judgment is sought.  <u>Patterson v. County of Oneida, NY</u>, 375 F.3d 206, 218 (2d Cir. 2004).  If there is any evidence in the record on a material issue from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is inappropriate.  <u>Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.</u>, 391 F.3d 77, 83 (2d Cir. 2004).  However, "'[t]he mere of existence of a scintilla of evidence in support of the [plaintiff's] position will be insufficient; there must be evidence on which the jury could reasonably find for the

**2**

[plaintiff].'"  <u>Dawson v. County of Westchester</u>, 373 F.3d 265, 272 (2d Cir. 2004) (quoting <u>Anderson</u>, 477 U.S. at 252)).

Lastly, <u>pro se</u> litigants are entitled to an "accessible" explanation of Rule 56 of the Federal Rules of Civil Procedure, and the implications of a motion for summary judgment:

> We take this opportunity to briefly discuss the interplay between Rule 56 of the Federal Rules of procedure ("Rule 56") and the <u>pro se</u> litigant who does not move for summary judgment.  And we remind the district courts of this circuit, as well as summary judgment movants, of the necessity that <u>pro se</u> litigants have actual notice, provided in an accessible manner, of the consequences of the <u>pro se</u> litigant's failure to comply with the requirements of Rule 56.

<u>Irby v. New York City Transit Authority</u>, 262 F.3d 412, 414 (2d Cir. 2001).  The Defendants have complied with this requirement via notice provided to Ruffino on August 24, 2009 informing him, <u>inter alia</u>, that the Defendants' motion for summary judgment may be granted and his claims may be dismissed if he failed to file opposition papers as required by Fed. R. Civ. P. 56 and Local R. 56.  <u>See</u> Doc. #19.

## II.  <u>FACTS</u>

Unless otherwise noted, the following facts are provided in the Defendants' Local Rule 56(a)1 Statement and accompanying exhibits.  <u>See</u> Doc. #20.  On October 15, 2009, Ruffino requested a ninety day extension of time, until December 21, 2009, to respond to the Defendants' summary judgment motion.  <u>See</u> Doc. # 22.  As of the date of this ruling, however, Ruffino has not provided a response and has not requested an additional extension, despite having been

3

provided notice by the Defendants of the consequences of his failure to comply with Fed. R. Civ. P. 56 and Local R. 56.  See Doc. #19.  As a result, the facts as set forth in the Defendants' Local R. 56(a)1 statement are deemed admitted.  See D. Conn Local Civ. R. 56(a)1 ("All material facts set forth in said statement will be deemed admitted unless controverted by the statement required to be served by the opposing party in accordance with Rule 56(a)2.").

In 2007, while he was a pretrial detainee, Ruffino received numerous disciplinary reports for infractions, including his assault of a Correctional Officer and interference with safety and security operations.  As a result, Ruffino was placed in the Administrative Segregation Program at Northern Correctional Institution.  The Administrative Segregation Program has three phases.  During Phase I, which lasts a minimum of 120 days, inmates receive one hour of recreation five days per week, are fully restrained whenever they leave their cells, and are subject to restrictions on visitation and access to personal property. During this phase, inmates recreate alone or with a cell-partner in small individualized recreation yards.  Inmates are not restrained while in these recreation yards.

Phases II and III are both ninety-day programs.  Inmates are assigned to groups during both of these phases.  Members of a group attend all programs together and recreate together.  Restrictions on visitation and phone calls progressively decrease as inmates advance through the phases.  During the first thirty days in Phase II, inmates are confined to their cells for twenty-three hours

per day, are handcuffed with their hands in front of them whenever they leave their cells, and remain handcuffed during recreation.  After the first thirty days, inmates are no longer restrained during recreation.  From October 19, 2007, until November 19, 2007, Ruffino was required to wear handcuffs during recreation periods pursuant to his participation in Phase II of the Administrative Segregation Program.

Inmates in Phase II are permitted to exercise in their cells.  Ruffino stated in his deposition that he probably did push-ups, dips, and crunches in his cell during the first thirty days he was in Phase II of the Administrative Segregation Program.  He stated that he also could have jogged in place, but did not recall whether he actually did so.  There is no evidence in the record that an inmate performing only these exercises for thirty days would suffer adverse health effects.  In addition, there is no evidence in the record that, over the course of an hour, an inmate would suffer cold symptoms or otherwise be harmed by wearing a coat over his shoulders because handcuffs prevent the placement of arms into the coat's sleeves.

Likewise, there is no evidence in the record that the handcuff requirement caused mental, emotional, or psychological problems among the inmates.  Specifically, there is no evidence in the record that requiring Ruffino to wear handcuffs during recreation for thirty days had a significant effect on his mental, emotional, or psychological health.

5

### III.  DISCUSSION

In his sole remaining claim, Ruffino contends that requiring him to attend recreation as a pretrial detainee in handcuffs during the first thirty days of Phase II amounted to punishment and that the Defendants therefore violated his Fourteenth Amendment right to due process.  The Defendants move for summary judgment on two grounds:  first, that Ruffino's constitutional rights were not violated; and second, that his claim is barred by the doctrine of qualified immunity.

Claims asserted by pretrial detainees are reviewed under the Due Process Clause of the Fourteenth Amendment.  See Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979).  Pretrial detainees have a substantive due process right not to be housed under conditions of confinement that constitute punishment.  See id. at 535-37. Not every restriction imposed during pretrial detention, however, constitutes punishment in the constitutional sense.  Absent evidence of an expressed intent to punish on the part of correctional officials, a particular condition or restriction will not be considered punishment if the condition or restriction is reasonably related to a legitimate governmental objective, such as maintaining institutional order and security.  See id. at 538-40; see also Arar v. Ashcroft, 532 F.3d 157, 190 (2d Cir. 2008) (rejecting detainee's substantive due process claim because detainee did not allege that conditions of confinement were imposed with punitive intent and that conditions were not reasonably related to legitimate government purpose).

6

Inmates are transferred to the Administrative Segregation Program if their "behavior while incarcerated poses a threat to the security of the facility or a risk to the safety of staff or other inmates."  Defs.' Local Rule 56(a)1 Statement, Ex. A, Doc. #20-5, at 2.  During Phase I of the program, an inmate is restrained whenever he leaves his cell.  He is not restrained during recreation because he recreates alone or with only his cell partner.  In Phase II, an inmate is assigned to a group and attends recreation with that group.  Because this is the first time that the inmate associates with inmates other than his cell partner, he is handcuffed whenever he leaves his cell, including during the group recreation period. Because all inmates in the Administrative Segregation Program have displayed behavior that threatens the safety of staff or other inmates or threatens the security of the facility, there is an increased risk of inmate-on-inmate violence during recreation.  The Defendants contend that the handcuff policy decreases the risk of violence and ensures institutional security and personal safety by affording inmates time to adjust to group activities.  The Court concludes that these are legitimate penological objectives and that a handcuff requirement for the initial thirty days of Phase II is not unreasonable.  See Benjamin v. Frazier, 264 F.3d 175, 188 (2d Cir. 2001) (explaining that the court must determine whether the restriction at issue is rationally related to the identified objective and "'whether it appears excessive in relation to the alternative purpose assigned [to it]'") (quoting Bell, 441 U.S. at 538)).

Ruffino has presented no evidence suggesting that institutional security

7

and personal safety are not legitimate penological objectives or showing that any Defendant had an intent to punish him.  While Ruffino alleges in his complaint that "[t]here have been many documented incidents of inmates slipping off their handcuffs and using them as a weapon to assault other inmates or department of corrections staff members," (Compl. ¶ 18), he has failed to present any evidence of even one such incident.  Therefore, he has not met his burden in opposition to the Defendants' motion for summary judgment to demonstrate a genuine issue of material fact.

Ruffino also alleged in his complaint that attending outdoor recreation in handcuffs from October 19, 2007 until November 19, 2007 caused him to experience cold symptoms because inmates could not put their arms through the sleeves of their coats, could not button or zip their coats, and could not put their hands in their coat pockets to keep warm.  He also alleged that the practice caused him mental, emotional and psychological harm.  Compl. at 15-16, ¶¶ 25-26.  The Court will consider Ruffino's allegations to be claims of deliberate indifference to inmate health.

Although claims of deliberate indifference to a serious medical condition or other serious threat to the health or safety of a pretrial detainee are considered under the Fourteenth Amendment while claims of sentenced inmates are considered under the Eighth Amendment, the same standard applies to both pretrial detainees and sentenced inmates.  See Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009).  To prove deliberate indifference, Ruffino must at the very least

establish that "a government-employed defendant disregarded a risk of harm to the plaintiff of which the defendant was aware."  Id. at 71.

Ruffino has not provided any evidence that he suffered from or was placed in jeopardy of any serious physical aliment, such as induced hypothermia or frostbite, from the exposure of his hands and arms to the elements.  He does contend that he suffered from a common cold as a result of this exposure.  A common cold is not a serious medical condition.  See, e.g., Wheeler v. Walker, 303 Fed. Appx. 365, 368 (7th Cir. 2008).  Furthermore, Ruffino has presented no evidence to support his claim that exposure to cold temperatures while wearing a coat draped over him instead of wearing a coat with his arms through the coat's sleeves caused him to contract a common cold.  To the contrary, the Defendants have presented the affidavit of Dr. Edward A. Blanchette, a physician for the Department of Correction, who opines that this practice would not cause cold symptoms.  See Blanchette Aff. ¶ 8 [Doc. #20-7].  Thus, absent any showing of a risk of harm or actual injury, the Plaintiff's deliberate indifference claim necessarily fails.

Ruffino also alleges that the practice of placing him in restraints during recreation caused him mental, emotional, and psychological harm.  Ruffino has presented no medical evidence that he suffers from mental, emotional, or psychological conditions.  The Defendants, however, have presented the affidavit of psychiatrist Dr. Suzanne Ducate.  See Doc. #20-8.  Dr. Ducate's review of Ruffino's medical records reveals that, at the time he was in Phase II of the

Administrative Segregation Program, Ruffino had been diagnosed with anti-social and borderline personality disorder, impulse control disorder, and adjustment disorder with anxiety.  See id. ¶ 6.  For purposes of deciding this motion, the Court recognizes that these are serious psychological conditions.

Ruffino did not complain to any mental health professional about the handcuff requirement during recreation at the time he was participating in Phase II of the Administrative Segregation Program.  See id. ¶ 7.  In addition, Dr. Ducate opined that the handcuff requirement did not cause Ruffino any mental, emotional, or psychological harm and did not exacerbate his preexisting mental state.  See id. ¶¶ 9-10.  Ruffino has provided no evidence to the contrary.  Thus, he has failed to show that he suffered any psychological harm, nor has he demonstrated that any Defendant was aware he suffered an excessive risk to his mental health.  Consequently, Ruffino's claim for deliberate indifference to his mental health needs fails.

Finally, the Defendants argue that they are protected by qualified immunity. The doctrine of qualified immunity protects government officials from liability for damages caused by the performance of discretionary official functions if their conduct does not violate a clearly established right of which a reasonable person would have been aware.  See Zellner v. Summerlin, 494 F.3d 344, 367 (2d Cir. 2007).

When considering a claim of qualified immunity, the Court considers two questions:  first, whether, construing the facts in favor of the non-moving party,

**10**

there is a violation of a constitutionally protected right; and second, whether, considering the facts of the case before it, that right was clearly established at the time of the incident.  Qualified immunity is warranted unless the state official's conduct violated a clearly established constitutional right.  See Pearson v. Callahan, ___ U.S. ___, 129 S. Ct. 808, 813, 815-16 (2009) (setting forth qualified immunity test and holding that a court need not consider the questions in any particular order).  To evaluate whether a right is clearly established, the Court must determine whether it would be clear to a reasonable correctional official that his conduct in the circumstances of this case was unlawful.  See Saucier v. Katz, 533 U.S. 194, 202 (2001).

        The Defendants have identified several Connecticut state and federal cases holding that requiring inmates to attend recreation while handcuffed does not violate their Eighth Amendment rights.  See Morgan v. Rowland, No. 3:01cv1107(CFD), 2006 WL 695813, at *6-8 (D. Conn. Mar. 17, 2006) (holding that requiring inmates to attend recreation wearing handcuffs and shackles did not violate Eighth Amendment); Tillman v. Warden, No. CV023659, 2003 WL 1090415, at *3 (Conn. Super. Ct. Feb. 26, 2003); Caballero v. Warden, No. CV003178, 2003 WL 139524, at *3 (Conn. Super. Ct. Jan. 2, 2003).  In addition, other federal district courts have held that a pretrial detainee may be required to attend recreation while in shackles.  See also Gannon v. Alyers, No. 7:09CV00066, 2009 WL 840376, at *4-5 (W.D. Va. Mar. 30, 2009) (holding that conditions of pretrial detention, including requirement that inmate attend recreation while shackled, do not

**11**

constitute constitutional violations); <u>Barnes v. Doby</u>, Civil Action No. 4:05-02073-MBS-TER, 2007 WL 2908574, at *9 (D.S.C. Aug. 13, 2007) (requiring pretrial detainee to attend recreation in shackles based on his classification as maximum security inmate was not punishment) (recommended ruling affirmed and adopted by 2007 WL 2908582), <u>aff'd</u>, 284 Fed. Appx. 48 (4th Cir. 2008) (per curiam). Research has revealed no contrary decisions.

The absence of controlling precedent supporting Ruffino's claim demonstrates that he did not possess a clearly established constitutional right to attend recreation without handcuffs.  The Court concludes that a reasonable correctional officer would not understand that requiring Ruffino to attend recreation in handcuffs was unlawful.  Accordingly, even if the restraint policy that the Plaintiff complains of was found to be unconstitutional, the Plaintiff's claim would still fail because the Defendants are protected by qualified immunity.

## IV.  <u>CONCLUSION</u>

Based upon the above reasoning, the Defendants' motion for summary judgment [Doc. #20] is GRANTED.  The Clerk is directed to enter judgment in favor of the Defendants, and to close this case.

IT IS SO ORDERED.

/s/
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  March 9, 2010.